IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| THE SERBIAN CROWN, VIRGINIA, INC, *A Virginia Stock Corporation*, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Civil Action No.:  1:14-cv-547 (GBL/TCB)** |
| GOOGLE INC., *A Delaware Stock Corporation* | ) ) ) | |
| Defendant. | ) ) ) ) | (Removed from the Circuit Court of Fairfax County, CL No. 2014 04673) |

**DEFENDANT GOOGLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS COMPLAINT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 2

ARGUMENT ............................................................................................................................. 4

I.       LEGAL STANDARD FOR MOTIONS TO DISMISS.................................................... 4

II.      PLAINTIFFS' STATE LAW NEGLIGENCE CLAIM REGARDING THE
         HOURS INFORMATION IS BARRED BY SECTION 230 OF THE
         COMMUNICATIONS DECENCY ACT BECAUSE IT IS BASED ON
         CONTENT THAT GOOGLE DID NOT CREATE .......................................................... 5

         A.       Congress Immunized Internet Companies Such as Google from Suit Based
                  on Content Provided by Third Parties ..................................................................... 5

         B.       CDA Immunity Bars Plaintiff's Negligence Claim Here ........................................ 6

         C.       Any Failure to Alter the Hours Information Would Not Preclude CDA
                  Immunity ................................................................................................................. 9

         D.       Application of CDA Immunity on a Motion to Dismiss is Proper .......................... 9

III.     PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED FOR THE
         ADDITIONAL REASON THAT PLAINTIFF HAS NOT PLED FACTS
         GIVING RISE TO A REASONABLE INFERENCE THAT GOOGLE CAUSED
         THE PLAINTIFF HARM ............................................................................................. 11

IV.      PLAINTIFF'S FALSE ADVERTISING CLAIM SHOULD BE DISMISSED
         FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM BECAUSE
         THE SERBIAN CROWN AND GOOGLE ARE NOT COMPETITORS AND
         ITS ALLEGED HARM IS NOT COGNIZABLE UNDER THE LANHAM ACT......... 13

CONCLUSION ......................................................................................................................... 15

## **TABLE OF AUTHORITIES**

### CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................4, 10, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................4

*Black v. Google*,
    No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905 (N.D. Cal. Aug. 13).........10

*Blue Ridge Service Corporation v. Saxon Shoes, Inc.*,
    624 S.E.2d 55...................................................................................11

*Blumenthal v. Drudge*,
    992 F. Supp. 44 (D.D.C. 1998).......................................................6, 8, 9

*Brown v. Gilmore*,
    278 F.3d 362 (4th Cir. 2002) ..............................................................9

*DiMeo v. Max*,
    433 F. Supp. 2d 523 (E.D. Pa. 2006) ...................................................10

*Doe v. Myspace, Inc.*,
    528 F3d 413, 419 (5th Cir. 2008) .........................................................9

*Eley v. Evans*,
    467 F. Supp. 2d 531, 532 n.3 (E.D. Va. 2007) .......................................11

*Global Royalties, Ltd. v. Xcentric Ventures, LLC*,
    544 F. Supp. 2d 929 (D. Ariz. 2008) ....................................................9

*Goddard v. Google Inc.*,
    No. 08-cv-2738, 2008 U.S. Dist. LEXIS 101890 (N.D. Cal. Dec. 17, 2008)..........7, 12, 13

*Green v. Am.Online*,
    318 F.3d 465 (3d Cir. 2003)...............................................................10

*Jurin v. Google Inc.*,
    695 F. Supp. 2d 1117 (E.D. Cal. 2010)..............................................7, 14

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007)......................................................7

*Mmubango v. Google, Inc.*,
    No. 12-1300, 2013 U.S. Dist. LEXIS 24989 .......................................7, 10

*Mylan Laboratories, Inc. v Matkari*,
    7 F.3d 1130 (4th Cir. 1993) ...............................................................13

*Nasser v. Whitepages, Inc.*,
    Civil Action No. 5:12cv097,
    2013 U.S. Dist. LEXIS 166133 (W.D. Va. Nov. 22, 2013)..............................................8, 9

*Nasser v. Whitepages, Inc.*,
    Civil Action No. 5:12cv097,
    2013 U.S. Dist. LEXIS 73697 (W.D. Va. May 24, 2013) ...................................................10

*Nemet Chevrolet, Ltd v. Consumeraffairs.com*,
    591 F.3d 250 (4th Cir. 2009) ......................................................4, 6, 7, 9, 10, 12

*Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*,
    564 F. Supp. 2d 544 (E.D. Va. 2008) .............................................................7, 10, 13, 14

*Novins v. Cannon*,
    Civ. No. 09-5354, 2010 U.S. Dist. LEXIS 41147 .............................................................10

*Parker v. Google*,
    422 F. Supp. 492 (E.D. Pa. 2006) ...............................................................................7, 10

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767 ..........................................................................................................................12

*Rosetta Stone, Ltd v. Google Inc.*,
    732 F. Supp. 2d 628 (E.D. Va. 2010) ....................................................................................7

*Sandoz Pharmacueticals Corp. v. Richardson-Vicks, Inc.*,
    902 F.2d 222, 230 (3d Cir. 1990)..........................................................................................13

*Seldon v. Magedson*,
    2012 11 Civ. 6218, U.S. Dist. LEXIS 141616.........................................................................9

*Universal Commun. Sys. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) ..............................................................................................6, 9

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ......................................................................................5, 6, 8, 9

## STATUTES

47 U.S.C. § 230(c) ....................................................................................................................6

47 U.S.C. § 230(c)(1)................................................................................................................5

47 U.S.C. § 230(e)(1), (2), (4) .................................................................................................6

47 U.S.C. § 230(f)(2) ................................................................................................................7

15 U.S.C. § 1125(a)(1)(B) ....................................................................................................5, 14

## RULES

Fed. R. Civ. P. 12(b)(1)......................................................................................................1, 15

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 15

Defendant Google Inc. ("Google") hereby respectfully moves this Court to dismiss the Complaint of Plaintiff The Serbian Crown, Virginia, Inc. ("The Serbian Crown") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

In April 2013, The Serbian Crown restaurant in Great Falls, Virginia went out of business, as restaurants often do for any number of reasons. Rather than accept that restaurants, even longstanding ones, sometimes fail, the owner of this particular restaurant looked around for someone to blame. Who did he settle on? Google.

As the Complaint tells it, The Serbian Crown restaurant was forced to close its doors not because of rising rents, difficulty sourcing ingredients, declining quality, poor service, changing tastes, poor business decisions, increased competition, or any of the other myriad reasons that can cause an established restaurant to struggle. Rather, the Complaint maintains that The Serbian Crown closed because the operating hours listed for it on Google's Maps and Places services were—for some unspecified, limited period beginning around a year before the restaurant closed—inaccurate. When were the hours corrected, as The Serbian Crown admits they were? The Complaint does not say. How much revenue was lost as result of the allegedly incorrect hours? The Complaint gives no hint. In short, The Serbian Crown seeks to recover at least $1 million from Google based on nothing more than conjecture and loose innuendo, including bizarre, unsupported allegations that Google was intentionally acting on behalf of the restaurant's competitors and that by accurately listing the restaurant as "permanently closed" now, Google continues to inflict harm on the shuttered restaurant. The Serbian Crown should not be permitted to vex Google or this Court with such meritless claims.

The Serbian Crown's claims should be dismissed for the following reasons:

- Its state law negligence claim is barred by Section 230(c) of the Communications Decency Act, which immunizes providers of interactive computer services, including Google, from suits like this one, where a plaintiff seeks to hold a website operator liable for content provided to it by third parties.

- Its state law negligence claim also fails because it has not alleged facts that give rise to a plausible inference that the subsequently corrected hours information or the "permanently closed" language caused it any harm.

- It lacks standing to bring a claim for false advertising under the Lanham Act, and in any event cannot state a claim, because Google and it are not competitors and the harm it alleges is not the sort that the Lanham Act was enacted to remedy.

## STATEMENT OF FACTS[1]

Plaintiff The Serbian Crown operated a restaurant, also called The Serbian Crown, in Great Falls, Virginia serving Serbian, Russian, and French food and spirits. (Compl.[2] ¶¶ 1, 3.) The restaurant ceased operations in April 2013. (*Id.* at ¶ 22.)

Defendant Google is an Internet company based in Mountain View, California. (*Id.* at ¶ 4, 5.) Google is not in the restaurant business. (*Id.* at ¶ 8.) Among the Internet services Google provides to users is a directory containing a vast number of informational listings for restaurants and other businesses around the world. Typically, these listings include physical addresses, telephone numbers, and operating hours for businesses. (*Id.* at ¶¶ 6, 11.) Google publishes these listings free of charge through services including Google Maps and Google Places. (*Id.*) One of the millions of business listings that Google hosted is for The Serbian Crown restaurant. (*Id.* at ¶ 11.) The listing displayed the restaurant's address, telephone number, and hours of operation along with a map. (*Id.*) According to the Complaint, The Serbian Crown listing was "placed" on Google Maps and Google Places by "an employee or authorized agent of defendant, or other third party individual or entity with a contractual relationship of some sort (contractual privity) with Google." (*Id.*) Notably, the Complaint does not allege that the information contained in The

---

[1] Unless otherwise noted, the facts described here are taken from the allegations contained in the Complaint, which are assumed to be true for the purposes of this motion.

[2] Citations to "Compl." refer to the Complaint for Legal and Equitable Relief filed by The Serbian Crown in the Circuit Court of Fairfax, Virginia on April 4, 2014.

Serbian Crown listing was created by Google. Rather, it alleges that the information was Google "sponsored." (*Id.* ¶¶ 8, 10, 11, 14.)

At some point on or before April 6, 2012, The Serbian Crown alleges that it learned from a customer that the operating hours for The Serbian Crown that were listed on Google's services were inaccurate. (*Id.* at ¶ 21.) Specifically, the Complaint alleges that the listing incorrectly showed the restaurant as closed on Saturdays, Sundays and Mondays. (*Id.* at ¶ 12.) According to the Complaint, on or about April 6, 2012, The Serbian Crown made "what would end up being a series of unsuccessful efforts at communicating with, as well as persuading," Google to change the hours information "all to no relevant or meaningful, much less timely response or reaction from" Google. (*Id.* at ¶ 21.) The Complaint does not state what those efforts were. However, the Complaint acknowledges that "the information regarding the hours was remedied," (*Id.* at ¶ 33), apparently after The Serbian Crown hired an "internet marketing consultant" to correct the information. (*Id.* at ¶ 22.) The Complaint fails to allege *when* the hours information was corrected. Rather, it states that "the damage had been done" and that "in its weakened state, the restaurant was not able to continue to operate with a full staff, operations suffered, and in April 2013, the restaurant was forced to close." (*Id.*) The Complaint does not explain how the allegedly incorrect information could have been a proximate cause of the restaurant's closure. In addition to failing to allege how long the hours information listed on Google was incorrect, the Complaint does not allege, for example, how many potential customers saw the allegedly incorrect listing and how much revenue was lost as a result.

Following the restaurant's closure, Google added language to the Maps and Places listing for The Serbian Crown indicating that it is "permanently closed." (*Id.* at ¶ 25.)  While admitting that it is "partially true," because the restaurant is in fact closed, the Complaint contradicts itself by labeling the statement false because the owner entertains dreams of reopening someday "if possible." (*Id.*) The Serbian Crown apparently claims damages for the "permanently closed" language based on the loss of goodwill, despite the fact that the restaurant is no longer a functioning business. (*Id.*)

The Serbian Crown originally filed the Complaint on April 4, 2014 in the Circuit Court of Fairfax County, Virginia. Google removed the case to this Court on May 13, 2014 based on federal question and diversity jurisdiction. The complaint asserts two claims: (1) negligence and negligent supervision under Virginia common law, and (2) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  The Complaint prays for damages of $1 million, which it claims is "equal to three times the aggregate amount of all loss of revenue, and loss of goodwill," in addition to various forms of injunctive relief. (*Id.* At p. 10.)

## ARGUMENT

### I.   LEGAL STANDARD FOR MOTIONS TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility" that the defendant is liable to the plaintiff. *Id*. Accordingly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557). Thus, to satisfy this standard, "the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd v. Consumeraffairs.com*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and a court should disregard "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678; *see also Nemet* 591 F.3d at 255 ("legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.").

II.   **PLAINTIFFS' STATE LAW NEGLIGENCE CLAIM REGARDING THE HOURS INFORMATION IS BARRED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT BECAUSE IT IS BASED ON CONTENT THAT GOOGLE DID NOT CREATE**

The Serbian Crown's state law claim for negligence and negligent supervision based on Google's alleged posting of incorrect operating hours for the restaurant should be dismissed because it is apparent from the face of the complaint that Google is entitled to immunity under Section 230 of the Communications Decency Act of 1996.

A.   **Congress Immunized Internet Companies Such as Google from Suit Based on Content Provided by Third Parties**

During the Internet's infancy, Congress recognized that in order to realize its full promise as a communication medium, Internet companies like Google who make third-party content available on the Internet could not be subjected to liability simply because such content was accessible through their services. Congress recognized that "[t]he amount of information communicated via interactive computer services is . . . staggering," and was concerned that if each piece of information republished by interactive computer services could give rise to liability, services might choose to severely restrict the information they published. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997). With that in mind, "Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect." *Id.*

Congress created this immunity through Section 230 of the Communications Decency Act of 1996 ("CDA"), which provides as follows:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1). Section 230 goes on to further specify:

> No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

*Id.* § 230(e)(3)[3]

As court after court has explained, Congress was concerned about the chilling effect on the free flow of information on the Internet that would occur if interactive service providers could be held liable for content created by others. *See, e.g., Zeran*, 129 at 330 ("The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech. Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum."). Thus, "Congress made the legislative judgment to effectively immunize providers of interactive computer services from civil liability in tort with respect to material disseminated by them but created by others." *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998); *see also Nemet*, 591 F.3d at 254 ("Congress . . . established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them.") Section 230 has consistently been given a broad interpretation in favor of Internet companies and against litigants who seek to hold such companies liable based on content created by others. *See Nemet*, 591 F.3d at 254 ("To further the policies underlying the [CDA], courts have generally accorded [Section 230] immunity a broad scope."); *see also Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 415 (1st Cir. 2007) ("Congress has granted broad immunity to entities . . . that facilitate the speech of others on the Internet.").

### B.      CDA Immunity Bars Plaintiff's Negligence Claim Here

The Serbian Crown's state law claim against Google is barred by Section 230 because (1) Google is a provider of "interactive computer service[s]," (2) the claim seeks to treat Google as a "publisher or speaker," and (3) the allegedly harmful content at issue was created by

---

[3] Section 230 recognizes only a handful of exceptions to its wide-ranging immunity. Prosecutorial enforcement of criminal laws is outside the ambit of Section 230, as are civil claims for violation of intellectual property laws and claims for violation of federal wiretapping laws. *See* 47 U.S.C. § 230(e)(1), (2), (4). None of these exceptions are applicable here.

"another information content provider." 47 U.S.C. § 230(c); *see also Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 548 (E.D. Va. 2008) (Lee, J.), *aff'd* 591 F.3d 250 (2009).

First, it cannot be disputed that Google is a provider of an "interactive computer service." The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . ." 47 U.S.C. § 230(f)(2). As this Court has held, Google fits the definition of an interactive computer service and as such can enjoy immunity under the CDA. *See Rosetta Stone, Ltd  v. Google Inc.*, 732 F. Supp. 2d 628, 632 (E.D. Va. 2010) (Lee, J.) (dismissing unjust enrichment claim against Google because it is "no more than an interactive computer service provider"); *aff'd on other grounds* 676 F.3d 144,166 (4th Cir. 2012). Numerous other courts have done the same. *See Mmubango v. Google, Inc.*, No. 12-1300, 2013 U.S. Dist. LEXIS 24989, at *5-6 (Google's search engine meets the definition); *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1122-23 (E.D. Cal. 2010) (same); *Goddard v. Google Inc.*, No. 08-cv-2738, 2008 U.S. Dist. LEXIS 101890, at * 6 & n.2 (N.D. Cal. Dec. 17, 2008) (same and confirming that "a number of courts have already determined that Google is an interactive computer service provider"); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631 (D. Del. 2007) (same for Google's advertising platform);  *Parker v. Google*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006) ("there is no doubt that Google qualifies as an 'interactive computer service' and not an 'information content provider.'").

Second, it is clear that The Serbian Crown seeks to treat Google as the "publisher or speaker" of the allegedly harmful content. The Complaint itself repeatedly refers to Google's role as that of publisher. (*See* Compl. ¶ 8 (harmful speech is "the sponsored content [Google] furnishes and publishes to the consumer public"); ¶ 9 ("Google publishes directory information, in part, as a lead-in for purposes of selling advertising . . ."); ¶ 10 ("In setting up, and continuing to maintain and publish, sponsored content purporting to state Plaintiff's business information . . ."); ¶ 13 ("The publication of this information placed Plaintiff at a material

disadvantage with its competitors.") And among the relief it seeks is an order "restraining Defendant from publishing or disseminating false or misleading information as to Plaintiff and others" and "enjoining Defendant from publication of similarly false and/or misleading advertisements." (*Id*. at p. 10.)

Third, the only plausible inference that can be drawn from the allegations in the Complaint is that the hours information came from third-party sources. The Complaint describes the information in the Serbian Crown listing as "sponsored"—not created—by Google. (*See* Compl. ¶¶ 8, 10, 11, 14.) Indeed, there is no allegation that Google itself participated at all in the creation of the content at issue. For good reason. Google publishes millions of such listings for businesses worldwide, and it would border on ridiculous to suggest that Google itself prepares the content itself for each one rather than relying on third-parties to supply the underlying information. The Complaint tacitly acknowledges that reality by alleging only that Google sponsors, or contracts for, the content. (*Id.*) Unfortunately for The Serbian Crown, that acknowledgement bars its claim.

The fact that the information at issue here is alleged to have been generated not by ordinary users, but by services that Google may have contracted with does not diminish the application of Section 230. The immunity afforded by the CDA applies no less to third-party content that an interactive computer service actively solicits. *Blumenthal*, 992 F. Supp. at 51-52 (D.D.C. 1998); *see also Nasser v. Whitepages, Inc.*, Civil Action No. 5:12cv097, 2013 U.S. Dist. LEXIS 166133, at *10 (W.D. Va. Nov. 22, 2013) (holding that immunity is not lost "when the interactive service provider pays a third party for the content at issue, and essentially becomes a 'distributor' of the content.") (quoting *Zeran*, 129 F.3d at 332). This reflects a policy choice by Congress to provide immunity "even where the interactive service provider has an active, even aggressive role in making available content prepared by others." *Blumenthal*, 992 F. Supp. at 51-52. For example, in *Blumenthal*, the plaintiff sought to hold internet service provider AOL liable for allegedly defamatory content posted there and created by Matt Drudge, arguing that Section 230 should not have applied because AOL contracted with Drudge, paid him $36,000 a year, and

aggressively promoted his content to its subscribers. *Id.* The court concluded that despite AOL's role in contracting for and promoting Drudge's content, AOL could not be liable for the content under Section 230 because AOL did not create it.[4] *Id.*; *see also Nasser*, 2013 U.S. Dist. LEXIS 166133, at *9 (holding that an online telephone directory website was immune under Section 230 for an erroneous phone listing because the website "receive[d] all of its data from third parties and [did] not create any content itself.") The same principle applies here. Nowhere has The Serbian Crown alleged that Google itself created the allegedly erroneous hours information. Indeed, it could not make such an allegation in good faith. Accordingly, the CDA bars any remedy.

### C.   Any Failure to Alter the Hours Information Would Not Preclude CDA Immunity

Plaintiff's allegations that Google did not correct the hours information quickly enough when informed of it does not change the analysis. The law is clear: Section 230 immunity applies even after notice of potentially unlawful third-party content. *Zeran*, 129 F.3d at 330; *see also Lycos* 478 F.3d at 420 ("It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech."); *Doe v. MySpace Inc.*, 528 F.3d 413, 419 (5th Cir. 2008) (citing *Zeran* in rejecting liability upon notice); *Seldon v. Magedson*, 2012 11 Civ. 6218, U.S. Dist. LEXIS 141616 at *64 n.25 (S.D.N.Y. July 10, 2012) (rejecting liability upon notice for website operators); *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 932 (D. Ariz. 2008) (same). The alleged notice is thus irrelevant to the application of Section 230.

### D.   Application of CDA Immunity on a Motion to Dismiss is Proper

The immunity provided by § 230(c) "is an *immunity from suit* rather than a mere defense to liability and it is effectively lost if a case is erroneously permitted to go to trial." *Nemet*, 591

---

[4] Indeed, any alleged role Google had with the respect to the hours information in the present case is even more passive than AOL's role in *Blumenthal*.

F.3d at  254-55 (quoting *Brown v. Gilmore*, 278 F.3d 362, 366 n.2 (4th Cir. 2002)). As such, this Court should "aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from ultimate liability, but also from having to fight costly and protracted legal battles." *Id.* at 255 (internal quotation marks omitted). Thus, where application of CDA immunity is clear from the face of the Complaint, dismissal for failure to state a claim is appropriate. *Nemet*, 564 F. Supp. 2d at 548, 555; *see also Green v. Am. Online*, 318 F.3d 465, 473 (3d Cir. 2003); *Mmubango*, 2013 U.S. Dist. LEXIS 24989, at *8; *Black v. Google*, No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905, at *9 (N.D. Cal. Aug. 13), 2010; *Parker*, 422 F. Supp. 2d at 500-01; *DiMeo v. Max*, 433 F. Supp. 2d 523, 529-31 (E.D. Pa. 2006); *Novins v. Cannon*, Civ. No. 09-5354, 2010 U.S. Dist. LEXIS 41147, at *5-8 (all granting motions to dismiss based on CDA immunity).

This is just such a case. It cannot be disputed that Google is an "interactive service provider" and that the Complaint seeks to treat Google as a speaker or publisher. The Complaint nowhere alleges that Google had any role in the creation of the allegedly incorrect hours information, but rather that it "sponsored" the content, *i.e.* paid for it and chose to place it on its websites. (Compl. ¶¶ 8, 10, 11, 14.) Sponsoring of third-party content is not actionable under the CDA, and without more, The Serbian Crown has not stated a claim for relief that is plausible on its face. [5] *See Iqbal*, 556 U.S. at 678. Nor can it state such a claim, because it does not have a good faith basis to plead that the hours information was created by Google. Its claim should thus be dismissed.

---

[5] In this respect, this case differs from *Nasser*, cited *supra* at p. 8, which was decided on a motion for summary judgment rather than a motion to dismiss. In that case, the Complaint raised factual questions regarding whether Whitepages was an "interactive computer service" or an "information content provider," and whether it was responsible for the development of the incorrect telephone listing. *See Nasser v. Whitepages, Inc.*, Civil Action No. 5:12cv097, 2013 U.S. Dist. LEXIS 73697, at *10-11 (W.D. Va. May 24, 2013). The court thus ordered limited, expedited discovery only on the question of CDA Immunity, after which it found that immunity applied and granted summary judgment to Whitepages. *Nasser v. Whitepages*, 2013 U.S. Dist. LEXIS 166133, at *3, 19. No such uncertainty exists here, and dismissal is thus proper.

### III. PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT PLAINTIFF HAS NOT PLED FACTS GIVING RISE TO A REASONABLE INFERENCE THAT GOOGLE CAUSED THE PLAINTIFF HARM

Plaintiff's state law negligence claim also fails because the Complaint does not allege facts giving rise to a reasonable inference that any of Google's alleged conduct was the proximate cause of any harm suffered by Plaintiff.[6] Once the conclusory statements are trimmed away, the Complaint alleges only the following facts regarding the hours information:

- Google's listing for The Serbian Crown incorrectly omitted open hours on Saturdays, Sundays, and Mondays[7] as of April 6, 2012 (Compl. ¶ 21.)

- The Serbian Crown took some unspecified steps to communicate the inaccuracy to  Google around that time, and it ultimately "engaged the services of an internet marketing consultant to correct the information." (*Id.* at ¶¶ 21, 22.)

- Sometime thereafter, the hours information on Google was corrected (*Id.* at ¶ 33)

- In April 2013, the restaurant went out of business. (*Id.* at ¶ 22.)

These factual allegations are insufficient to give rise to a plausible inference of proximate cause. The Serbian Crown's claim for relief is based on the idea that incorrect hours posted on Google's services caused the restaurant to go out of business, but its own Complaint (1) admits that the incorrect information was fixed, and (2) pointedly fails to allege *when* it was fixed. The timing of the fix is important. Perhaps it could be plausibly inferred that the incorrect information caused

---

[6] The required elements of an action for negligence under Virginia law are "a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006). To the extent The Serbian Crown asserts a claim for negligent supervision, that is not a valid cause of action in Virginia. *See, e.g.*, *Eley v. Evans*, 467 F. Supp. 2d 531, 532 n.3 (E.D. Va. 2007) (noting that "federal and Virginia cours have held that Virginia does not recognize negligent supervision as a valid cause of action.")

[7] In fact, The Serbian Crown's own website suggests that Google *correctly* listed the restaurant as closed Mondays, directly contrary to the allegations of the Complaint. The website, both in the version that remains up and running, and in a version from May 2012 accessed through the Internet Archive Wayback Machine, states that the restaurant is "Closed on Mondays except for Special Private Events." *See* http://www.serbiancrown.com (current version) and https://web.archive.org/web/20120510150836/http://www.serbiancrown.com/ (archived version). However, on this motion to dismiss Google treats the factual allegations of the Complaint as true.

the restaurant's closure if it was the only source of the hours information, if it was widely viewed and relied upon, and if it persisted right up until the very end of the restaurant's life. But none of that is alleged. And if, as it appears, the information was fixed within a few weeks after The Serbian Crown first noticed it (*i.e.*, nearly a year before the restaurant closed), the claim verges into the realm of the frivolous. Regardless, the Complaint includes no allegations regarding the financial impact of the incorrect hours information, only that "the damage had been done." (Compl. ¶ 22.) The Complaint's allegations are not sufficient to "nudge the Plaintiff's claim[] across the line from conceivable to plausible," and the claim should thus be dismissed. *Nemet*, 591 F.3d at 256 (internal quotation marks omitted).

Neither do allegations that Google's listing currently indicates that the restaurant is "permanently closed" provide the basis for a plausible inference that Google caused The Serbian Crown any harm.[8] Google uses the notation "permanently closed" to allow users to distinguish between businesses that are merely closed for the day and those that have gone out of business. The Serbian Crown admits that the very language it complains of is "partially true," and it offers no facts, nor even any logical explanation, of how this true statement can "materially and irreparably erode the remaining goodwill of the restaurant", (Compl. ¶ 25), even if Plaintiff does intend to someday reopen the restaurant.  In any event, the information is accurate. The First Amendment precludes any claim based upon it. *Cf. Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776.

---

[8] It is unclear whether the allegations regarding the "permanently closed" language are intended to form a basis for The Serbian Crown's state law negligence claim or its claim for false advertising. The Complaint, under the heading for the negligence count, does not include any specific allegations, but rather incorporates and restates the Complaint's prior allegations, including those related to the "permanently closed" language, (Compl. ¶ 28), and Google thus treats these allegations as related to the negligence claim. However, even if these allegations are intended to relate to The Serbian Crown's false advertising claim, that claim must still be dismissed for the reasons set forth in Section IV, *infra*.

**IV.    PLAINTIFF'S FALSE ADVERTISING CLAIM SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM BECAUSE THE SERBIAN CROWN AND GOOGLE ARE NOT COMPETITORS AND ITS ALLEGED HARM IS NOT COGNIZABLE UNDER THE LANHAM ACT**

The Serbian Crown lacks standing to sue for false advertising under the Lanham Act. As this Court has explained, in order to have Lanham Act standing under any of the various tests used by courts, a plaintiff must be in competition with the Defendant and its alleged injury must be of the sort the Lanham Act sought to redress. *See Nemet*, 564 F. Supp. 2d at 552-53 (Lee, J.). Here, the Complaint admits that The Serbian Crown and Google are not competitors. (*Compare* Compl. ¶ 3 ("Plaintiff corporation is in the restaurant business") *with* ¶ 8 ("Google is not believed to be in the restaurant business.").) The Serbian Crown thus lacks standing to sue for false advertising under the Lanham Act. *Nemet*, 564 F. Supp. 2d at 552-53; *see also Mylan Laboratories, Inc. v Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) (The Lanham Act is "a private remedy [for a] commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising.") (quoting *Sandoz Pharma. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230 (3d Cir. 1990)).  Nor is its alleged injury the type the Lanham Act sought to prevent. Google is not alleged to have threatened a trademark owned by The Serbian Crown, impinged on the ability of consumers to distinguish between competing products, induced The Serbian Crown's customers to switch to its competing products, or done anything else that would touch on the Lanham Act's purposes. *See Nemet*, 564 F. Supp. 2d at 552-53 (analyzing tests for Lanham Act standing). Rather, The Serbian Crown simply alleges that information on a Google website misstated a fact about Plaintiff. That is not sufficient to establish standing or a cognizable Lanham Act injury. The Serbian Crown's allegations  criticizing the manner in which Google systems are set up to allow businesses to correct errors in their listings, do not alter this conclusion. (*See* Compl. ¶¶ 30-32.)

Additionally, The Serbian Crown's false advertising claim should be dismissed for failure to state a claim because the allegedly false information placed on Google's services is not "commercial advertising or promotion" under Section 43(a) of the Lanham Act, codified at 15

U.S.C. § 1125(a)(1)(B). "Commercial advertising or promotion," the only type of speech that is actionable under that section of the Lanham Act, can only be made "by a defendant who is in commercial competition with the plaintiff." *Nemet* 564 F. Supp. 2d at 544-55. As discussed above, Google and the Serbian Crown are in completely different lines of business. Accordingly, the parties are not competitors, the speech at issue is not "commercial advertising and promotion," and the claim should be dismissed. *See Id.* at 554-55.

The Serbian Crown apparently tries to plead around this hole in its claim by alleging that Google "acted on behalf of" or "as an informational surrogate and/or agent for" advertisers who compete with The Serbian Crown in the local restaurant business. (Compl. ¶¶ 7, 8.) These allegations do not save its claim. The possibility that Google may have sold advertising to some of The Serbian Crown's competitors is irrelevant; the only thing that matters is that Google itself is not its direct competitor. *See Jurin*, 695 F. Supp. 2d at 1122 ("Although [Google] may provide advertising support for others in Plaintiff's industry, [Google] nonetheless does not directly sell, produce, or otherwise compete in the building materials market. Without a showing of direct competition, Plaintiff fails to sustain a claim for false advertising under the Lanham Act.") The alleged corollary that Google was somehow acting as an agent of The Serbian Crown's competitors by selling them advertising is a frivolous, "naked assertion" that should be disregarded. *Iqbal* 556 U.S. at 678. Under any reading of The Serbian Crown's Complaint, it has never been in competition with Google, and thus it cannot maintain a claim against it for false advertising.

## **CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court dismiss The Serbian Crown's Complaint for failure to state a claim under Rule 12(b)(1) and 12(b)(6).

Respectfully submitted,

Dated:  June 17, 2014

GOOGLE INC.

By counsel

 /s/ *Creighton J. Macy*
Creighton J. Macy (VSB No. 77016)
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, DC 20006-3817
202.973.8800 (Phone)
202.973.8899 (Facsimile)
cmacy@wsgr.com
*Counsel for Defendant Google Inc.*

David H. Kramer (*admitted pro hac vice*)
Michael R. Petrocelli (*admitted pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
415.947.2000 (Phone)
415.947.2099 (Facsimile)
mpetrocelli@wsgr.com
*Counsel for Defendant Google Inc.*

## CERTIFICATE OF SERVICE

I certify that on this day, I will file the following documents with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the persons listed below:

**DEFENDANT GOOGLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

Christopher R. Rau (VSB No. 34135)
LAW OFFICES OF CHRISTOPHER R. RAU
6711 Lee Highway, Suite 220
Arlington, VA 22205-1940
703.536.1660 (Phone)
crrau@aol.com
*Counsel for Plaintiff The Serbian Crown, Virginia, Inc.*


Dated: June 17, 2014
                                         */s/ Creighton J. Macy*
                                   Creighton J. Macy (VSB No. 77016)
                                   WILSON SONSINI GOODRICH & ROSATI
                                   1700 K Street NW, Fifth Floor
                                   Washington, DC 20006-3817
                                   202.973.8800 (Phone)
                                   202.973.8899 (Facsimile)
                                   cmacy@wsgr.com
                                   *Counsel for Defendant Google Inc.*