IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| THE SERBIAN CROWN, VIRGINIA, INC, *A Virginia Stock Corporation*, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **Civil Action No.: 1:14-cv-547 (GBL/TCB)** |
| GOOGLE INC., *A Delaware Stock Corporation* | ) ) ) | |
| Defendant. | ) ) ) ) | (Removed from the Circuit Court of Fairfax County, CL No. 2014 04673) |

**DEFENDANT GOOGLE INC'S REPLY MEMORANDUM OF LAW IN
<u>FURTHER SUPPORT OF ITS MOTION TO DISMISS</u>**

Defendant Google Inc. ("Google") hereby respectfully submits this reply in further support of its Motion to Dismiss and in response to Plaintiff's Memorandum in Opposition ("Opp".)

In response to Google's Motion to Dismiss, Plaintiff ("Serbian Crown") purports to voluntarily dismiss its negligence claim, apparently acknowledging that this claim is barred by Section 230(c) of the Communications Decency Act ("CDA"). That leaves only Plaintiff's Lanham Act claim for false advertising. Serbian Crown points out that the Supreme Court's very recent decision in *Lexmark International, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377 (2014), changed the law regarding who is eligible to sue for false advertising under the Act. While *Lexmark* does undermine the argument that only direct competitors can bring Lanham Act claims, and Google regrets it was unaware of this recent change in the law, the decision does not save Plaintiff's claim. That is so for at least three reasons.

*First*, Serbian Crown has not satisfied *Lexmark*'s core holding that "a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." 134 S. Ct. at 1390. Plaintiff cannot meet that standard here. The complaint alleges no facts making it plausible to conclude that would-be diners saw incorrect hours posted on a Google page, and relied exclusively on that information in deciding never to eat at Plaintiff's restaurant. Accordingly, under the proximate-cause standard adopted in *Lexmark*, Serbian Crown has not stated a claim under the Lanham Act.

*Second*, there can be no false advertising claim without an actual false *advertisement*. Here Google's statements about Serbian Crown's hours of operation were not made in any "commercial advertising or promotion" as required by the Lanham Act. 15 U.S.C. § 1125(a)(1)(B). Google was not advertising its services but simply providing factual information as an online directory service. That is not commercial speech and is not actionable under the Lanham Act.

*Third*, the false advertising claim is barred by the CDA. Everything Google said in its opening brief about the CDA applies equally to this claim. In displaying Serbian Crown's

1

operating hours, Google was an "interactive computer service" presenting "information provided by another information content provider." 47 U.S.C. § 230(c)(1). And Plaintiff's claim seeks to hold Google liable as the "publisher or speaker" of that information, which is precisely what the CDA forbids. *Id*. Contrary to what Plaintiff suggests, a claim for false advertising is not based on any "intellectual property law." Just like the negligence claim, therefore, the false advertising claim is precluded.

## ARGUMENT

Google argued in its motion to dismiss that the robust immunity provided by the CDA applies to this case and bars Serbian Crown's claims. Specifically addressing the false advertising claim, Google further argued that (1) because Serbian Crown and Google are not direct competitors and because the alleged injury is not the type that the Act seeks to prevent, Plaintiff could not sue under the Lanham Act; and (2) the claim failed because "the allegedly false information placed on Google's services is not 'commercial advertising or promotion' under Section 43(a) of the Lanham Act[.]" Google MTD Br. at 13-14. Plaintiff offers no real response on the CDA, and tries to avoid a ruling on that issue by voluntarily dismissing its negligence claim. Opp. at 1.[1] On the Lanham Act, Plaintiff devotes nearly its entire opposition

---

[1] Plaintiff filed a pro forma request to voluntarily dismiss its negligence claim without prejudice under Fed. R. Civ. P. 41(a), and the Court endorsed that request on July 11, 2014. But Plaintiff's approach was procedurally improper. Rule 41(a) permits only the dismissal of entire *actions*; it cannot be used "to dismiss, unilaterally, a single claim from a multi-claim complaint." *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir. 1988).  Rule 41(a) "is designed to permit a disengagement of the parties at the behest of the plaintiff," *Armstrong v. Frostie Co.*, 453 F.2d 914, 916 (4th Cir. 1971), not to permit a plaintiff to abandon some claims while continuing to press others. *See* 8 Moore's Federal Practice § 41.21[1] (3d ed. 2004) ("Rule 41(a) may not be employed to dismiss fewer than all of the claims against any particular defendant."). If Plaintiff wishes to remove one of its claims from this lawsuit, the proper procedure is an amended pleading under Rule 15. *See, e.g., Skinner v. First Am. Bank*, No. 93-2493, 1995 U.S. App. LEXIS 24237, at *4-5 (4th Cir. Aug. 28, 1995) (unpublished opinion). Plaintiff cannot use Rule 41(a) to escape an adjudication on the merits of its negligence claim. And, as explained in Google's opening brief, that claim fails as a matter of law and thus should be dismissed with prejudice. Accordingly, Google respectfully submits the Court should modify its July 11, 2014 Order to require dismissal of the negligence claim with prejudice, or alternatively should vacate that Order and require Plaintiff to file an amended complaint that drops the claim.

brief to the Supreme Court's decision in *Lexmark*. Google did not discuss that case in its opening brief, and it is true that *Lexmark* departed from this Circuit's decisions requiring direct-competition to state a claim. But *Lexmark* does not change the result here. While the Supreme Court rejected the categorical rule that only direct competitors can sue for false advertising, there remain significant limits on such claims, limits that Serbian Crown cannot satisfy. And the *Lexmark* Court certainly did not alter the bedrock rule that a Lanham Act claim must involve "commercial advertising or promotion." Even under *Lexmark*, therefore, Plaintiff cannot state a claim. But if a claim could be stated here, it would still be barred by the CDA.

## I.     Plaintiff's False Advertising Claim Fails As A Matter of Law

Contrary to the apparent premise of Plaintiff's Opposition, *Lexmark* is not carte blanche for any Lanham Act claim brought by a non-competitor. Instead, the Court imposed meaningful limits on such claims, requiring that plaintiffs plead and ultimately prove that their injuries are "proximately caused by violations of the statute." *Lexmark*, 134 S. Ct. at 1390. This requirement "generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct[.]" *Id*. Likewise, the Supreme Court did not address—and certainly did not relax—the Lanham's Act separate requirement that a false advertising claim can arise only where the statements at issue were made in the context of "commercial advertisement or promotion." 15 U.S.C. § 1125(a)(1)(B); *see Lexmark*, 134 S. Ct. at 1385 n.1 ("That question is not before us, and we express no view on it."). Plaintiff's Lanham Act claim fails on both of these grounds.

First, Serbian Crown has not plausibly alleged that its purported injuries (the loss of customers and ultimately the closing of its restaurant) were proximately caused by the statements about its operating hours that appeared on Google's service. In this regard, the fact that Google does not compete with Serbian Crown remains relevant to the proximate cause inquiry. As the Supreme Court noted, "a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation." *Lexmark*, 134 S. Ct at 1392. The plaintiff in *Lexmark* was able to overcome that hurdle because the alleged false advertising "disparaged its

business and products"—the Court explained that when "a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements." *Id.* at 1393. But this case is different.

Serbian Crown does not allege disparagement. It claims merely that Google published incorrect information about when the restaurant was open. In contrast to a case where the statement "denigrates a plaintiff's product by name" or "damages the product's reputation by, for example, equating it with an inferior product" (*Id.* at 1393), the statements at issue here have no natural tendency to harm Plaintiff's business. In this scenario, the kind of proximate cause contemplated by *Lexmark* does not exist. That is particularly true given that, as Plaintiff acknowledges, accurate information about the restaurant's operating hours was available from a variety of readily accessible sources, including other Internet directories. Opp. at 5-6 (citing Compl. ¶ 35). Under those circumstances, it is not plausible to conclude that the information displayed on Google's page had any tangible bearing on the restaurant's commercial prospects. It is difficult to imagine that anyone who would otherwise have dined at the restaurant relied exclusively on uncorrected hours information when it was briefly available on a Google page, and then never chose to visit.[2]  Without facts to make plausible that inference of proximate cause, Plaintiff's false advertising claim cannot proceed. *Lexmark*, 134 S. Ct. at 1391 n.6 ("If a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)).

Second, as an independent basis for dismissing the Lanham Act claim, Google argued that Plaintiff has failed to meet the bedrock requirement that the statements at issue be made in "commercial advertising or promotion." Google MTD Br. at 13-14. Plaintiff offers no meaningful response. That is not surprising, as the statements at issue here plainly are not commercial advertisements. To qualify as "commercial advertising or promotion" under the

---

[2]  Plaintiff is unclear in the Complaint whether it is alleging that the Google page affirmatively said the restaurant was closed on Saturday, Sunday and Monday or that it listed hours for Tuesday through Friday and had no information at all for the other days.  If it is the latter, the notion of a causal connection is even less plausible.

Lanham Act, a statement must be "commercial speech" and must be made "for the purpose of influencing consumers to buy defendant's goods or services[.]" *Applied Med. Res. Corp. v. Steuer*, 527 F. Supp. 2d 489, 493 (E.D. Va. 2007) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002); *see also Wojnarowicz v. American Family Ass'n*, 745 F. Supp. 130, 141-42 (S.D.N.Y. 1990) (Lanham Act "is clearly directed only against false representations in connection with the sale of goods or services"). These limitations are essential, lest the Lanham Act be used to target speech that raises core First Amendment concerns. *See Gordon & Breach Science Publishers S.A. v. American Institute of Physics*, 859 F. Supp. 1521, 1533 (S.D.N.Y. 1994) ("Section 43(a) was not intended to apply, and cannot constitutionally be applied, to representations other than those determined to be commercial speech"); 135 Cong. Rec. H1216-17 (daily ed. April 13, 1989) (legislative history explaining that the "commercial advertising" language was intended to "exclude all other misrepresentations from section 43(a) coverage," including statements "which raise free speech concerns, such as a Consumer Report which reviews and may disparage the quality of . . . products").[3]

"Commercial speech" is "speech that does no more than propose a commercial transaction" (*United States v. Edge Broad. Co.*, 509 U.S. 418, 426 (1993)), or that is "related solely to the economic interests of the speaker and its audience" (*City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993)). *Goodman v. Doe*, 2014 U.S. Dist. LEXIS 42130, at *13-14 (E.D.N.C. Mar. 28, 2014). The statements made on Google's website about Plaintiff's

---

[3] As discussed in Google's opening brief (at 14), a separate requirement for "commercial advertising or promotion"—which has been uniformly embraced by district courts in this Circuit"—is that the statements be made "by a defendant who is in commercial competition with plaintiff." *Steuer*, 527 F. Supp. 2d at 493; *see also Nemet*, 564 F. Supp. 2d at 554-55. There is no reason to think that this requirement was abolished by *Lexmark*, and courts have continued to apply it following the Supreme Court's decision. *See, e.g., Goodman v. Doe*, No. 4:13-cv-139-F, 2014 U.S. Dist. LEXIS 42130, at *20 n.7 (E.D.N.C. Mar. 28, 2014) ("Surely Lexmark is not to be read to eliminate the word 'commercial' from 'commercial advertising and promotion.'"). Plaintiff concedes that it cannot satisfy this requirement here, and that is further reason to find that the statements at issue are not commercial advertising or promotion. *See id.* (holding that postings aimed at "driving traffic to the website, not diverting business from [plaintiff] to his competitors" are not commercial advertising under the Lanham Act).

restaurant meet neither of those criteria. As it does for a vast array of businesses, Google's online directory simply presented factual information (supplied by users or other public sources) about such things as the restaurant's address, contact information, and hours of operation. In presenting this information, Google was not proposing a commercial transaction with any of its users or trying to persuade them to buy Google's products. Nor were these statements related solely to the economic interests of Google and those who use its services. To the contrary, the statements were aimed at giving members of the public easy access to useful information. This was not an advertisement for Google's service; it *is* Google's service. *See, e.g., Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Med.*, 189 F. Supp. 2d 271, 276 (D. Md. 2001) (article published in trade journal was not "commercial advertising or promotion" because "nowhere in the article do the authors advocate for a commercial transaction. It is neither suggested that the reader buy any product or service, nor that they refrain from buying any product or service."), *aff'd*, 48 F. App'x 42 (4th Cir. 2002).

Plaintiff asserts that Google's efforts to provide information about businesses' locations and hours "is part of its overall business of selling advertising, and promoting its other lines of business[.]" Opp. at 2. This effectively concedes that the statements themselves do not constitute commercial advertising. And plaintiff's suggestion that a website is engaged in commercial advertising simply because it presents factual information as part of its "overall business" would have radical consequences. That argument would suggest that nearly any statement made on any website, nearly all of which aim to generate traffic to sell advertising, is subject to a possible Lanham Act claim if the statement contains inaccurate information about a business. That is not the law, nor could it be. *See, e.g., Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 550, 554-55 (E.D. Va. 2008) (consumer reviews posted on website were not "commercial advertising or promotion" under the Lanham Act). The listing at issue here is no more commercial advertising than the similar information that appears on online directory services like www.whitepages.com, the information about movie times that appears on websites such as www.moviefone.com, or the information about train and bus schedules that appear on

6

websites such as www.hopstop.com. All of those websites may be commercial operations. But that does not make all information that appears on them commercial speech. *See Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 67 (1983) ("the fact that Youngs has an economic motivation for mailing the pamphlets would clearly be insufficient by itself to turn the materials into commercial speech").

The court in *Goodman* held that nearly identical allegations could not give rise to a Lanham Act claim. There, the plaintiff (a business owner) sued over a number of disparaging statements made about his business on a website called localdirtbags.com. Just like Plaintiff here, the plaintiff claimed that "the Doe Defendant who registered and operates localdirtbags.com engages in the conduct alleged in this Complaint in order to drive traffic to the blog, and increase the monetary value of the blog, in a collective effort to promote and sell the blog to a third party." *Goodman*, 2014 U.S. Dist. LEXIS 42130, at *17. The court had little trouble finding that this did not make the statements commercial advertising:

> This allegation is plainly insufficient to state a false advertising claim. That the Defendant operator published the articles and comments in an effort to make the website attractive for sale to third-parties is not sufficient to bring these postings within the commercial speech doctrine. The allegation could be made about any website. If a person creates a website in which he posts videos of kittens in various entertaining endeavors with the aim of ultimately making the website attractive to third-party purchasers, surely the videos themselves would not constitute speech that "does no more than propose a commercial transaction" or that is "related solely to the economic interests of the speaker and its audience." … Other than the allegation that the website author has a commercial interest in visits to her website, the complaint utterly fails to allege any commercial interest in the actual content of any of the articles or comments.

*Id.* at *17-19 (citations omitted). The same is true here, and is dispositive of Plaintiff's Lanham Act claim.

## II.     The False Advertising Claim Is Barred By The CDA

Google explained in its opening brief that Section 230(c)(1) of the CDA applies to this case. Google MTD Br. at 6-9. Plaintiff offers no response to these arguments. Indeed, in an effort

to avoid them, Serbian Crown has dropped its negligence claim altogether. But the CDA immunity also covers Plaintiff's remaining claim for false advertising under the Lanham Act.[4]

Everything that Google said about § 230 applies equally to the false advertising claim. *First*, Google remains an "interactive computer service" under the CDA's definition. 47 U.S.C. § 230(f)(2). *Second*, Plaintiff clearly seeks to treat Google as the "publisher or speaker" of the information at issue. *Id*. § 230(c)(1). In summarizing its false advertising claim, Plaintiff asserts that Google "publishes" directory information and that Google's "publication" of that information "put the Serbian Crown at a material disadvantage with competitors[.]" Opp. at 3 (citing Compl. ¶¶ 9, 13). *Third*, the information about Serbian Crown's operating hours was "provided by another information content provider." 47 U.S.C. § 230(c)(1). Plaintiff cannot plausibly allege that Google itself developed that information. To the contrary, the whole premise of Plaintiff's argument is that in operating its directory service, "Google acted as an informational surrogate and/or agent for various entities and individuals[.]" Opp. at 2. Under the CDA, therefore, Google cannot be held legally responsible for the appearance of that information on its website, and that is so even if Google encouraged third-parties to submit directory content or "selected and edited" that content for display. *See Jones v. Dirty World Entm't Recordings LLC*, __ F.3d __, 2014 U.S. App. LEXIS 11106, at *36-41 (6th Cir. June 16, 2014).

Beyond all this, applying the CDA to false advertising claims furthers the statute's basic purpose. The paradigmatic claim covered by § 230 is defamation. *Barnes v. Yahoo!, Inc*., 570 F.3d 1096, 1101 (9th Cir. 2009). If a disparaging statement is made in the context of commercial advertising, a claim can often be brought for either defamation or false advertising (or both). *Cf. Lexmark*, 134 S. Ct. at 1393. But so long as that statement was made by someone other than the

---

[4] While Google directed its CDA discussion to Plaintiff's negligence claim, Plaintiff clearly understood the potential application to its false advertising claim as well, and offered arguments (albeit incorrect ones) as to why the CDA did not bar that claim.   Insofar as Serbian Crown believes it has not had a fair opportunity to respond on this point, Google has no objection to further briefing addressing the CDA's applicability to false advertising. Alternatively, if the false advertising claim is not dismissed, Google is prepared to raise the CDA's application in a motion under Rule 12(c) once the pleadings are closed.

online service provider, the CDA immunity applies regardless of how the claim is styled. What matters under §230 "is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d 1101-02. That is certainly the case with false advertising. *See id.* (explaining that, among the various "information content" claims that an online service could be sued for, and that the CDA presumptively applies to, is "negligent publication of advertisements that cause harm to third parties"). Indeed, holding online services liable for publishing false information supplied by a third party—whether that information appears in an article, a blog post, or an advertisement—is precisely what the CDA is designed to avoid. *See Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("§ 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.").

Unable to dispute any of this, Plaintiff suggests that a false advertising claim falls within the CDA's exception for claims based on "intellectual property." Opp. at 7-8 (citing 47 U.S.C. § 230(e)(2)). That is clearly incorrect. Plaintiff's claim is based on alleged misstatements about its restaurant's hours of operation; it has nothing to do with the violation of any trademark, copyright, patent interest, or any other intellectual property right. False advertising claims under the Lanham Act are designed to remedy an "injury to a commercial interest in reputation or sales" caused by statements made in commercial advertising. *Lexmark*, 134 S. Ct. at 1390. As the Supreme Court has explained, such claims simply do not protect any cognizable "property" right (much less an "intellectual property" right):

> The Lanham Act may well contain provisions that protect constitutionally cognizable property interests—notably, its provisions dealing with infringement of trademarks, which are the "property" of the owner because he can exclude others from using them. The Lanham Act's false advertising provisions, however, bear no relationship to any right to exclude; and Florida Prepaid's alleged misrepresentations concerning its own products intruded upon no interest over which petitioner had exclusive dominion.

*College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Board*, 527 U.S. 666, 672-73 (1999) (citation omitted); *see also id*. at 675 ("business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense—and it is only that, and not any business asset, which is impinged upon by a competitor's false advertising").

Courts have repeatedly applied § 230 to bar false advertising claims against online services. *See, e.g.*, *Associated Bank-Corp v. Earthlink, Inc.*, No. 05-C-0233-S, 2005 U.S. Dist. LEXIS 20184 (W.D. Wisc. Sept. 13, 2005) (dismissing claim against Internet service provider under § 43(a) of the Lanham Act under the CDA); *Perfect 10, Inc. v. CCBill LLC*, 340 F. Supp. 2d 1077, 1109-10 (C.D. Cal. 2004), *aff'd in part, rev'd in part on other grounds*, 488 F.3d 1102 (9th Cir. 2007) (holding that false advertising claims do not pertain to intellectual property rights).[5] This Court should do likewise, and hold that both the negligence claim and the false advertising claim are barred by § 230.

## CONCLUSION

For these reasons, and those in Google's opening brief, all of Plaintiff's claims should be dismissed with prejudice.

---

[5] Plaintiff cites *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288 (D.N.H. 2008), *Doctor's Assocs. v. QIP Holder LLC*, No. 3:06-cv-1710, 2010 U.S. Dist. LEXIS 14687 (D. Conn. 2010), but those cases provide no support for the counterintuitive idea that a false advertising claim is a form of intellectual property. Neither case addressed whether the intellectual-property exception covered claims brought under the Lanham Act's false advertising provisions. Indeed, *QIP* actually undermines Plaintiff's argument, as the court there applied the CDA to the false advertising claim, though it ultimately denied summary judgment based on a factual dispute that has no parallel here. *QIP*, 2010 U.S. Dist. LEXIS 14687, at *65-71.

Respectfully submitted,

Dated:  July 14, 2014                    GOOGLE INC.


By counsel


_/s/ Creighton J. Macy_
Creighton J. Macy (VSB No. 77016)
WILSON SONSINI GOODRICH & ROSATI
1700 K Street NW, Fifth Floor
Washington, DC 20006-3817
202.973.8800 (Phone)
202.973.8899 (Facsimile)
cmacy@wsgr.com
*Counsel for Defendant Google Inc.*


David H. Kramer (*admitted pro hac vice*)
Michael R. Petrocelli (*admitted pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
415.947.2000 (Phone)
415.947.2099 (Facsimile)
mpetrocelli@wsgr.com
*Counsel for Defendant Google Inc.*


11

**CERTIFICATE OF SERVICE**

I certify that on this day, I will file the following documents with the Clerk of Court using

the CM/ECF system, which will then send a notification of such filing (NEF) to the persons

listed below:

**DEFENDANT GOOGLE INC'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS**

Christopher R. Rau (VSB No. 34135)
LAW OFFICES OF CHRISTOPHER R. RAU
6711 Lee Highway, Suite 220
Arlington, VA 22205-1940
703.536.1660 (Phone)
crrau@aol.com
*Counsel for Plaintiff The Serbian Crown, Virginia, Inc.*


Dated: July 14, 2014                      _____/s/ Creighton J. Macy_____
                                          Creighton Macy (VSB No. 77016)
                                          WILSON SONSINI GOODRICH & ROSATI
                                          1700 K Street NW, Fifth Floor
                                          Washington, DC 20006-3817
                                          202.973.8800 (Phone)
                                          202.973.8899 (Facsimile)
                                          cmacy@wsgr.com
                                          *Counsel for Defendant Google Inc.*