IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

THE SERBIAN CROWN, VIRGINIA, INC. )
            Plaintiff, )   Civil No. 14-cv-547
    VS. )   August 14, 2014
GOOGLE, INC. )
            Defendant. )

MOTIONS HEARING

BEFORE:     THE HONORABLE GERALD BRUCE LEE
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

  FOR THE PLAINTIFF: LAW OFFICES OF CHRISTOPHER R. RAU
                   BY: CHRISTOPHER R. RAU, ESQ.

  FOR THE DEFENDANT: WILSON, SONSINI, GOODRICH & ROSATI
                    BY: DAVID H. KRAMER, ESQ.
                    CREIGHTON J. MACY, ESQ.

                 ---

OFFICIAL COURT REPORTER: RENECIA A. SMITH-WILSON,RMR, CRR
                        U.S. District Court
                        401 Courthouse Square, 5th Floor
                        Alexandria, VA  22314
                        (703)501-1580

<u>INDEX</u>

ARGUMENT BY THE PLAINTIFF     12

ARGUMENT BY THE DEFENDANT      3     26

RULING BY THE COURT           29

---

1          (Thereupon, the following was heard in open

2    court at 3:01 p.m.)

3          THE CLERK:  1:14 civil 547, The Serbian

4    Crown, Virginia, Incorporated versus Google, Inc.

5          Would counsel please note your appearances

6    for the record.

7          MR. RAU:  Good afternoon, Your Honor.  I'm

8    Christopher Rau.  I represent the plaintiff, The Serbian

9    Crown of Virginia, Incorporated.

10          THE COURT:  Good afternoon, Mr. Rau.

11          MR. MACY:  Good afternoon, Your Honor.  My

12    name is Creighton Macy with Wilson, Sonsini, Goodrich &

13    Rosati representing Google.

14          And I'd also like to introduce my colleague

15    from California, Dave Kramer who has been pro hac-ed and

16    will be speaking on behalf of Google today.

17          Thank you.

18          THE COURT:  Good afternoon, Mr. Macy.

19          Good afternoon, Mr. Kramer.

20          MR. KRAMER:  Good afternoon, Your Honor.

21          THE COURT:  I'm ready.

22          MR. KRAMER:  May it please the Court, Your

23    Honor, we are here to discuss The Serbian Crown's claim

24    for false advertising under the Lanham Act against Google

25    for temporarily displaying on a page within the Google

1  Places directory service inaccurate information about the
2  restaurant's operating hours.
3          As we explained in our papers, The Serbian
4  Crown fails to state a claim for false advertising for
5  three reasons.  The first and most straightforward reason
6  that there is no claim for false advertising is that
7  there is no advertising.
8          Google's directory and the page devoted to
9  The Serbian Crown is not an ad.  The cases that are on
10  point here include *Goodman versus Doe* which involves some
11  blog postings about a plaintiff's business, *Neurotron*
12  which involved a trade journal about a competing medical
13  device, and *Nemet*, this Court's own decision, which
14  involved user reviews of an advertising -- of a car
15  dealer, I'm sorry.
16          This wasn't a Google ad.  There are four
17  requirements under the case law to demonstrate that
18  something constitutes an advertising -- that constitutes
19  an advertisement, I should say.
20          The first is that it must constitute
21  commercial speech.  Commercial speech is speech that does
22  no more than propose a commercial transaction.
23          THE COURT:  So, are you saying that when
24  someone types in Serbian Crown in Google Maps and they
25  get a listing and a telephone number, that that's not

1    intended to further commercial transaction?

2         MR. KRAMER:  It is not, Your Honor.  It is

3    not intended to promote a commercial transaction.  It

4    does not promote a commercial transaction.  It may allow

5    for a user to connect with The Serbian Crown restaurant

6    and thereafter engage in commerce.

7         But what Google is posting there is merely

8    informational -- informational listings much in the way

9    of an encyclopedia or a directory, not an ad.

10        THE COURT:  I thought I understood that

11   Google did not provide the information.  The information

12   was provided by someone else; is that right?

13        MR. KRAMER:  With respect to the information

14   that's at issue here, that's correct, Your Honor.

15        THE COURT:  All right.

16        MR. KRAMER:  The information that's at issue

17   in this case is the inaccurate hours information that the

18   plaintiff alleges appeared on that page for the

19   restaurant, and that information does not come from

20   Google.  It is not alleged to have come from Google in

21   the complaint.

22        And I can address that question when we get

23   into the context of the Communications Decency Act which

24   is a separate defense to the plaintiff's claim, a

25   separate reason why it fails to state a claim for false

1　advertising.

2　　　　　　THE COURT:  Well, you said first that you had

3　three reason.  The first was it was not an advertisement.

4　　　　　　MR. KRAMER:  Correct, the second is a failure

5　to allege facts from which it can plausibly be deemed

6　to -- the inaccurate information can plausibly be deemed

7　to have caused the injury about which the plaintiff

8　complains.

9　　　　　　THE COURT:  Is that proximate cause?

10　　　　　　MR. KRAMER:  Proximate cause, I could have

11　said it that way.  I would have saved some words, Your

12　Honor.

13　　　　　　Yes, so the first issue is it's not an ad as

14　a matter of law.  The second is there's no proximate

15　cause sufficiently alleged or plausibly alleged in the

16　complaint.  And the third is that the claim is barred as

17　a matter of law by the Communications Decency Act.

18　　　　　　And this is not simply a pleadings problem.

19　This is -- these are deficiencies that the plaintiff

20　could not overcome and, therefore, we ask that the Court

21　dismiss with prejudice, The Serbian Crown's complaint.

22　　　　　　I can go back and walk through those reasons

23　if the Court would like.

24　　　　　　THE COURT:  Well, actually I've read your

25　brief, but I know you came from California.  So what I'd

1    like to do is focus you if I could.

2              MR. KRAMER:  Sure.

3              THE COURT:  Your view is that the

4    Communications Decency Act which is I think Section 230

5    of the Telecommunications Act precludes state claims and

6    this claim under the Lanham Act; is that right?

7              MR. KRAMER:  It does, Your Honor, yes.  The

8    statute precludes any claim, no matter what it's labeled

9    to the extent it seeks to treat an interactive computer

10   service as responsible for content uploaded to the

11   service or supplied to the service by a third party.  It

12   doesn't matter what the label is.

13             There is an exception to the statute for IP

14   claims, but false advertising is not an IP claim, an

15   intellectual property claim.

16             THE COURT:  Why isn't it an intellectual

17   property claim?

18             MR. KRAMER:  The Supreme Court in the *College*

19   *Savings Bank* case, a case against the State of Florida

20   makes very plain that false advertising is different from

21   the other aspects of the Lanham Act which protect

22   trademarks.  False advertising is about protecting

23   consumer expectations.  There is no property right at all

24   in false advertising, much less a right to exclude which

25   is the hallmark of an intellectual property claim.

1          So, the Supreme Court in that case says as

2    much.  Courts that have addressed this issue specifically

3    and looked at the interplay between a false advertising

4    claim and the Communications Decency Act have held as

5    much.  The *CCBill* case, the District Court there said

6    false advertising is not an intellectual property claim.

7    The *Earthlink* case that we cited say not an intellectual

8    property claim.  Actually, the *Earthlink* claim doesn't

9    specifically address this question.

10         The *Barnes* case, the Ninth Circuit, very

11   strongly indicates that claims that are based on

12   advertisements that others supply would not give rise to

13   a claim for false advertising against an online service

14   provider.

15         There is no case that we were able to find

16   that says false advertising is an intellectual property

17   claim.  There are Lanham Act claims based on trademarks

18   that clearly fall outside 230's protection.  But this

19   circuit and a host of others have made clear that 230 is

20   supposed to be given very expansive readings with respect

21   to its protections and very narrow readings with respect

22   to its exceptions, less the immunity that Congress

23   bestowed upon online service providers in the interest of

24   promoting online discourse be undermined by artful

25   pleading.

1          So, calling a defamation claim false

2    advertising or calling it negligence or calling it

3    tortious interference doesn't change the nature of the

4    action.  To the extent it is not a copyright claim or a

5    trademark claim, it is not within the intellectual

6    property exception to 230(c).  It doesn't matter that

7    it's a federal claim.

8          THE COURT:  Does the *Lexmark* case change the

9    analysis of the proximate cause question?

10         MR. KRAMER:  I don't think it does change the

11   analysis on proximate cause.  It changes the analysis

12   certainly on the question of whether the parties need to

13   be in direct competition.  But it doesn't change the

14   time-honored concepts of proximate cause.  You need to

15   allege in a way that is -- in the -- judicial experience

16   and common sense of the court, a plausible connection

17   between one online service inaccurately stating hours

18   information for a temporary period, while everybody else,

19   according to the complaint, had it right and the ultimate

20   demise of the business a year later which is the

21   connection that the plaintiff asks the Court to draw in

22   its complaint and in its option.  We don't think that's

23   plausible.

24         There's no allegation here of who saw this or

25   that someone saw this or lots of people saw this and

1    decided not to patronize the restaurant.

2            The one person that's identified as having

3    seen this called the restaurant.  The restaurant

4    corrected their misimpression about the hours of

5    operation and presumably, there was no impact.

6            So, absent allegations that make plausible

7    proximate cause we don't believe it's satisfied here and

8    the answer to the Court's question is *Lexmark* does not

9    change that.

10           THE COURT:  All right.  As it relates to the

11   initial claim that has been brought here, the false

12   advertising claim, you say that Google did not post the

13   information.  So clearly Google is an information content

14   provider.  There is no question about that.

15           MR. KRAMER:  Google is not information

16   content provider.  It is in the role of interactive

17   computer service --

18           THE COURT:  I'm sorry, interactive computer

19   service.  That's the right term.

20           MR. KRAMER:  Those are the two actors that

21   the CDA speaks to.  So it is an online host with respect

22   to the information that's at issue here, the hours

23   information.

24           The plaintiff, by the way, Your Honor, does

25   not allege that Google posted this information.  The

1    complaint alleges it was Google or someone else.  Well,

2    that's a truism.  Of course it was Google or someone

3    else.  Someone put this information there.

4            But, the complaint does not allege that

5    Google itself posted the information.  It alleges that

6    Google sponsored this information.

7            The Ninth Circuit in the *Black versus Google*

8    case, a very similar case to this one, looked at the

9    allegations of sponsorship and said, gees, if I let

10   sponsorship allegations suffice for purposes of the CDA,

11   I'm going to allow an end run around the immunity and

12   around congressional intent.  You as an online service

13   are not responsible if you did not put it there.  And

14   that's true even if Google purchased the inaccurate hours

15   information from someone else.

16           There are cases like *Blumenthal versus Drudge*

17   and the *Earthlink* case and the *Nasser* case, all of which

18   say it doesn't matter even if you bought this stuff, even

19   if you are paying someone to provide it and it turns out

20   to be inaccurate, you are not responsible for it as

21   online service in the interest of free and open discourse

22   online.

23           THE COURT:  All right.  Well, I think I

24   understand your position.  Let me hear from the other

25   side and I'll give you a chance to respond.

1          MR. KRAMER:  Thank you, Your Honor.

2          MR. RAU:  Your Honor, if it please the Court,

3    I'd like to address counsel's arguments in turn.

4          THE COURT:  All right.

5          MR. RAU:  And, I guess what I'd like to start

6    with on this is to pose what's not really a hypothetical

7    to the Court which is if I'm a business owner and I've

8    done a contract for somebody and done work for them

9    and -- and I solicit them and say, I'd like you to put a

10   good post on some of these websites about me because, you

11   know, we did a good job on your contract and we'll give

12   you an additional one year where we'll, you know, give

13   you additional service calls and warranty and then that

14   person goes out and makes the postings that I request.

15         And, my question would be is -- is counsel

16   going to claim that that is not advertising?  Because I

17   believe that it is.  It's -- it involves a quid pro quo.

18   There's a this for that going on at some sort of level

19   and then that person is making postings out there.

20         And what they want you to believe is that if

21   it's posted and we just host the site, then we're

22   completely immune.  But as we've asserted to in our

23   briefs, Your Honor, we don't believe that that's the way

24   the law is intended to work.

25         And with respect to the applicability of the

```
 1    Communications Decency Act to false advertising claims, I
 2    don't believe that -- counsel makes reference to
 3    exclusivity, and I think there's a whole wealth of
 4    authority out there, Judge, to the effect that even
 5    corporations and businesses have a state law intellectual
 6    property right, if you will, of publicity in their own
 7    name.  And it is for that very reason that -- that the
 8    Virginia State Corporation Commission and other state --
 9    secretaries of state and corporation similar bodies don't
10    require -- don't allow two entities to register under the
11    exact same name.
12              THE COURT:  Well --
13              MR. RAU:  And that is an element of
14    exclusivity that goes along with the name of a
15    corporation.
16              Sure, it's not registered with the Patent and
17    Trademark Office or in that regard, but it is still a
18    form of exclusivity that they form in the name.
19              Now --
20              THE COURT:  Well, Mr. Rau, I want to stop you
21    because I want to go back to -- the facts of this case
22    are apparently someone did a Google search and
23    ascertained that the listings that appeared when you
24    typed in Google, Serbian Crown Restaurant, it had
25    inaccurate information about the hours it was open and it
```

1    also had inaccurate information, according to the

2    plaintiff, about whether or not the restaurant was

3    permanently closed.  Is that right?

4              MR. RAU:  That's correct, Your Honor.

5              THE COURT:  So then the issue is really the

6    appearance of that information on a -- in response to a

7    Google search falls within the purview of Communications

8    Decency Act.

9              Now, do you agree that --

10              MR. RAU:  And we don't obviously believe that

11    it does.

12              THE COURT:  I want to focus just on -- what

13    is Google's status here?  Is Google the publisher?  Is

14    Google the writer?  You said Google in the complaint is

15    the sponsor?  What do you say that means?  What does it

16    mean?

17              MR. RAU:  Well, we're saying that we don't

18    know exactly what the nature or extent of their role is.

19    What we've alleged in the complaint is that they

20    certainly have an interest, commercial interest in the

21    content of this communication of this content, if you

22    will, that's put on their website.

23              And, it is for that reason -- and they

24    also -- and, this is where their motion and their briefs

25    kind of go afar afield from what's alleged in the

1    complaint.

2              They're claiming that they don't have any

3    power to influence market decisions, whereas the --

4    that's not what the complaint alleges.  The complaint

5    alleges that they do have an overwhelming market power to

6    influence decisions because of their prevalence as a

7    search engine as well as the map function.

8              THE COURT:  I understand -- I understand from

9    your briefs you're making an argument.  But I'm trying to

10   laser focus just on the legal question of whether

11   Communications Decency Act immunity applies.

12             So, you agree that Google is not the author

13   of this information.  You say they sponsored it, which

14   means it appears in response to a search, is that right?

15   Is that what you're saying in your complaint?

16             MR. RAU:  We're saying that we're not sure

17   and that we don't know, that they could have been the

18   author, but that someone else could have been the author,

19   and that's as much as we know, Your Honor.  And so in

20   that sense, I think it's an alternative allegation.

21             THE COURT:  All right, but --

22             MR. RAU:  It's either them or someone else,

23   yes.  That pretty much covers the waterfront, Your Honor.

24             As far as --

25             THE COURT:  In your complaint, you say that

Google is an information and search engine provider; is that right?

MR. RAU:  That is correct, Your Honor.

THE COURT:  So that means the person that types in the information, types in a name like Serbian Crown and up pops information.

MR. RAU:  Yes, Your Honor.  And query --

THE COURT:  Is that an advertisement?

MR. RAU:  Is what an advertisement?

THE COURT:  The response that appears when you type in Google, Serbian Crown.

MR. RAU:  Yes, Your Honor, because what they sell is the rankings.  What they sell is what comes up and what -- and the -- with the ad words program, what they sell is what ends up coming up in the search, Your Honor.

The complaint also alleges, and this actually is part of the fact patent of this case, that they use this also as a lead in to sell to the people whose information was put there incorrectly, because then they have no choice but to go and change it and say we're the right people.

And then lo and behold, as my client did, he received a solicitation saying, you know, now that you've -- you know, entered into our user agreement, here

we can offer you these other services to advertise your business.  And so, that is a lead in, Your Honor.

Whether -- and, that is a proposal of a commercial transaction.  The initial posting is not a proposal in and of itself of a commercial transaction.

THE COURT:  I want to focus on what you just said.  So the listing --

MR. RAU:  In and of itself, yes.

THE COURT:  The index listing of the restaurant in a response to a Google Maps search or a Google search is not a commercial advertisement; is that right?

MR. RAU:  It's not a proposal in and of itself of a transaction.  It is advertising, however, because it is designed to promote their interest and business of -- I mean, they want to present themselves as well.  We're just -- we're furnishing this kind of tableau rousseau, which people populate as a directory.  But that's not true.  They have an interest in the information that gets up there, Your Honor.

THE COURT:  That may well be.  But the question is whether they're an interactive content provider within the meaning of the Communications Decency Act and there are several cases saying that say that they are.  What am I to do with that?

1            MR. RAU:  Well, Your Honor, our position, as

2    we've stated in our briefs is that this falls under the

3    intellectual property exception.

4            So, they may --

5            THE COURT:  What property are you claiming is

6    at stake here?  What intellectual property is at stake

7    here?  Is the name Serbian Crown?  Is it a trademark

8    Serbian Crown?  What intellectual property are you

9    stating?

10           MR. RAU:  It would be the name Serbian Crown

11   of Virginia as it relates to a restaurant business in the

12   Commonwealth of Virginia.

13           THE COURT:  Well, what is false about the

14   name Serbian Crown?

15           MR. RAU:  Your Honor's question was what kind

16   of interest do they have, and they have an interest in a

17   name that is associated with a restaurant that's opened

18   seven days a week --

19           THE COURT:  I'm assuming you're conferring a

20   trademark inference; is that a right?

21           MR. RAU:  It's not a registered trademark,

22   Judge.

23           THE COURT:  Well, you can have a trademark

24   name without a registered trademark.  I'm just trying to

25   understand if it's intellectual property --

1          MR. RAU:  I mean, I guess if you treated it

2     as unregistered trademark, yes, it would be that

3     particularized restaurant business with that name that

4     operates in Virginia, and --

5          THE COURT:  But the Lanham Act talks about

6     sponsoring false advertising.  You just said that's the

7     name of the restaurant.  So there's nothing false about

8     that, is there?

9          MR. RAU:  Well, no, that's a different issue,

10    Your Honor.  It's not the fact that they put the name of

11    the restaurant up there.  It's the fact of the -- the

12    information that was associated with it.

13         THE COURT:  Well, let's focus on that for a

14    second.  The information that was listed is wrong,

15    according to plaintiff, and you have a right to believe

16    that it's wrong.

17         MR. RAU:  That is correct, Your Honor.

18         THE COURT:  I'm trying to understand how that

19    will be a false advertising claim that will fall outside

20    the CDA.

21         MR. RAU:  Well, because it's part -- because

22    their interest -- their state law right of publicity and

23    their interest in their name is associated with the

24    restaurant that operates every day of the week, including

25    the days that Google said they were closed.

1      THE COURT:  But, this is not a *FriendFinder*

2  case.  I understand the *FriendFinder* case has been cited,

3  but this is not a case where someone's identity has been

4  presented on the Internet and has been used somehow for

5  some commercial purpose.  This is just a -- this is a

6  search on Google for an ad -- for an advertisement -- not

7  for advertisement, for a map and the hours are wrong.

8      Let's move from that to another issue and

9  that is the issue of proximate cause under the Lanham

10  Act.  You cited the *Lexmark* case.  Help me with your

11  proximate cause analysis here.  Are you saying that the

12  mere fact that the hours are wrong in a listing of Google

13  maps caused the business to close?

14      MR. RAU:  Your Honor, I think that that

15  particular argument on the defendant's part really goes

16  to which damages as opposed to whether damages.  And --

17      THE COURT:  I'm interested in the issue of

18  proximate causation.  If you would address that.

19      MR. RAU:  Yes, and I'm saying that they're

20  raising of the issue of proximate cause, there are

21  several different types of damages which have flowed from

22  this.  There's been a reduction in -- in sales volume,

23  and there's also been the closing of the business.

24      THE COURT:  Well, as I understand proximate

25  cause, you have to link the injury with damages and show

1    a causal relationship.

2              And according to you in the complaint, this

3    inaccurate information was posted, I think maybe a year

4    before the restaurant actually closed.  And I'm sure,

5    you're not saying that your sole lifeline of business for

6    this restaurant was what happened on Google search,

7    because there's Bing and there's Yahoo and there are

8    other search engines out there that are available as

9    well.

10             You're not saying that Google was the

11   lifeline of The Serbian Crown, are you?

12             MR. RAU:  Well, first of all, Your Honor, no

13   we're not saying that they were the lifeline.  And what

14   we are saying, however, is that this business would have

15   been better off if Google had done nothing with their

16   information.  They would have had better sales if Google

17   had done nothing with their information.

18             But, going beyond that, the complaint to --

19   to -- I want Your Honor to note that the complaint

20   alleges that we discovered, my client discovered the

21   inaccuracy of this information approximately a year or a

22   little bit more than a year before the restaurant closed.

23   But they do not known how long that information was out

24   there in that sort of way, or whether or not there were

25   incantations of it that changed prior to their becoming

1      aware of the incorrect part.

2                So, let's not operate from the misconception

3      that this is all about some one-year period of time,

4      Judge.  That has to do with when it was discovered.

5                But going beyond that, my client doesn't have

6      to prove as a matter of proximate cause -- first of all,

7      we're on a 12(b)(6).

8                THE COURT:  You don't have to prove anything

9      but even *Lexmark* acknowledges you have to set forth facts

10     to plausibly support the claim.  And if you do not do

11     that, then the claim can't go forward.

12               MR. RAU:  And what we've alleged in the

13     complaint, Your Honor, is that people were, in fact,

14     deterred away and obviously for a business, it's no

15     different than if somebody goes out there and says about

16     a lawyer who practices, yeah, did you hear that he died?

17               Once you've heard that, you may not ever try

18     and go see that lawyer even though it may be inaccurate.

19     And by the same token, once you've heard that they're

20     closed on weekends, you may never go back and try to go

21     there on weekends.

22               So --

23               THE COURT:  You raise a point there and that

24     was another issue that you raised and that is the listing

25     that was permanently closed -- is the restaurant open

1    now?

2              MR. RAU:  No.

3              THE COURT:  All right.  So the statement that

4    it's permanently closed is not false then, is it?

5              MR. RAU:  Well, it is false, because there's

6    a characterization there, Your Honor, permanently closed.

7    I mean, it has a certain finality to it that my client

8    disagrees with.

9              And in fact, the space has not yet been

10   filled by another business, Your Honor.

11             THE COURT:  And when did it close?

12             MR. RAU:  I think it was April of 2013.

13             THE COURT:  More than a year ago, okay.

14             MR. RAU:  Yeah.  So --

15             THE COURT:  Well, I was going to say that

16   I've asked --

17             MR. RAU:  Your Honor -- I'm sorry, go ahead.

18             THE COURT:  I was going to say I've asked you

19   the questions that I have.  But if there was something

20   further you want to say you were not given a chance to

21   say, I'll give you a chance to say it.

22             MR. RAU:  Your Honor, I think with respect to

23   the interpretation -- interpretation of Section 230, I --

24   there is an intellectual property interest here that my

25   client has in the name that they developed and the

1    business that they developed --

2              THE COURT:  What do you call it?

3              MR. RAU:  -- over a period.

4              THE COURT:  What do you call the intellectual

5    interest property that the company has?

6              MR. RAU:  I think it's goodwill, Your Honor I

7    mean --

8              THE COURT:  Okay.

9              MR. RAU:  -- garden variety commercial

10   goodwill which is part of what the Lanham Act is supposed

11   to be protecting.

12             And, I think that the impact of the *Lexmark*

13   case is -- has to do with, Your Honor, the fact that

14   competition in this type of situation can take a lot of

15   different types of forms.  It's not a traditional type of

16   competitive paradigm that the defendant has set up here.

17             And so, it is our belief that that's one of

18   the reasons the Supreme Court unanimously opened up the

19   standing issue was in order to take account of all of

20   these concatenations that occur, Internet companies going

21   into producing cars and saying well, we're not competing

22   with the automobile industry because we're doing

23   something completely different.

24             And I think part of what's been lost in all

25   of this jurisprudence with respect to the Communications

1   Decency Act is that -- is that this type of immunity is

2   very rare, didn't exist at common law.  It's in

3   dirigation of common law, Your Honor.  And they're saying

4   that it's to be accorded all of these expansive

5   definitions, and that everything revolves around that.

6           And what I'm offering to the Court, Your

7   Honor, is that they built in in this exception for a

8   reason and it was meant to apply to commercial parties

9   whose interests are being damaged.  And that's precisely

10  what we have in this case.

11          I don't think that the Court would similarly

12  pretermit on a 12(b)(6) in any sort of fashion issues of

13  proximate cause, for example, in a medical malpractice

14  action where the defendant just basically comes in and

15  say, well it's preposterous that somebody could have

16  paresthesia in their lower right leg based upon what

17  happened in their upper spine on the left side.

18          And that's not the type of thing that a

19  12(b)(6) is designed for when it comes to proximate cause

20  and the various components of the damages that exists,

21  Your Honor.

22          THE COURT:  All right.

23          MR. RAU:  So, I think that's about all that I

24  have to say about that.

25          THE COURT:  Thank you very much.

1      Mr. Kramer.

2      MR. KRAMER:  Thank you, Your Honor, just a

3   few words quickly.

4      Your Honor asked a question about whether the

5   CDA, Communications Decency Act covers federal claims.

6   If you look at the structure of the CDA, it's quite clear

7   that it does.

8      For example, there is an exception in the CDA

9   for wire tap claims under federal law.  You wouldn't need

10  that exception if the CDA was only applicable to state

11  claims.

12     Congress has other exceptions to the

13  protections provided by the CDA for claims involving

14  child exploitation under federal law.

15     Again, you wouldn't need those exceptions if

16  the statute only precluded claims under state law.

17     With respect to the IP exception, Your Honor,

18  there are a couple of cases that were cited in the

19  plaintiff's papers.  One of them, I think, makes clear

20  that the exception does not cover false advertising.  And

21  that is the *Quiznos* case, the *Subway versus Quiznos* case.

22  I think it's QIP and Doctor.  In that case, the Court was

23  quite prepared to apply the CDA to protect the online

24  service provider from a false advertising claim but

25  ultimately concluded it couldn't do that because the

1   service provider also played the role of creating the

2   consent.  But, there wasn't any issue about applying the

3   CDA to a false advertising claim.

4            Also, on the issue of the CDA -- oh, the

5   other case is *FriendFinder*, Your Honor.  And in that

6   case, there was no question about the applicability of

7   230 to the false advertising claim because it -- the ads

8   were clearly created by the service.  They were ads for

9   the service.  There was no discussion as to whether the

10  IP exception to the CDA applied because the CDA was

11  inapplicable on its face to ads created by the service

12  for its own goods and services.

13            THE COURT:  All right.

14            MR. KRAMER:  I want to touch, Your Honor, on

15  *Nemet*, in the Fourth Circuit and the pleading

16  requirements in the CDA case.  It's not enough to say in

17  a CDA case we don't know who created this content.  *Nemet*

18  is instructive, because in *Nemet*, the plaintiff actually

19  alleged that the service provider created the content,

20  some of the content.

21            And the Fourth Circuit in reviewing your

22  decision said that's conclusory and speculative.  You

23  haven't alleged facts from which I could reasonably

24  conclude that the service provider fabricated these

25  reviews of the auto -- auto dealer.

1          I'm going -- because the CDA is an immunity

2    from suit and would be lost if I allowed this case to go

3    forward, I'm going to dismiss it, notwithstanding the

4    fact that you actually alleged that the content at issue

5    was created by the defendant service provider.

6          We don't have that allegation here.  If we

7    did have that allegation here that Google actually

8    created this content, it wouldn't be plausible.  It

9    wouldn't be correct, but we don't have that allegation.

10         In *Nemet*, they had that allegation directly,

11   and the Fourth Circuit still dismissed the case because

12   this is an immunity, and an immunity from suit, not

13   simply the right to litigate over the question of whether

14   it should apply.

15         THE COURT:  Is the issue of proximate cause a

16   question I have to wait on, on a 12(b)(6) motion?

17         MR. KRAMER:  You do not have to decide the

18   question of proximate cause on a 12(b)(6) motion, Your

19   Honor, because the case that plaintiffs have brought

20   fails in the first instance because this isn't an ad and

21   in the second instance because Communications Decency Act

22   applies to bar the claim.

23         Last point, Your Honor, on the question of

24   whether this is an ad, the argument was advanced that

25   because this is in service of advertising on Google that

1   somehow Google is an ad supported service, therefore,

2   what is displayed through Google must necessarily

3   constitute an ad.

4           The same could be said about the Washington

5   Post or any television broadcaster, CBS.  They are

6   ad-supported services.  That does not make the editorials

7   in the Washington Post advertisements, even though it is

8   in service of gathering an audience so they can sell

9   advertising.

10          Likewise 60 Minutes is not an advertisement

11  for CBS.  It is information that is ad supported.  So too

12  is the Google service.  It provides all sorts of

13  information that is ad supported that does not transmute

14  everything on the service into an add.

15          That's all I have, Your Honor.

16          THE COURT:  Thank you very much.

17          Let the record reflect this matter is before

18  the Court on the defendant's Google's motion to dismiss

19  Count II false advertising, where the plaintiff The

20  Serbian Crown claims that Google posted allegedly false

21  information regarding The Serbian Crown's restaurant

22  which proximately caused the restaurant to loss revenue,

23  business, goodwill and ultimately go out of business.

24          In addition, Google argues that Serbian

25  Crown's factual allegations are insufficient to plausibly

1   establish any claims that could survive Google's immunity

2   under the Communications Decency Act.

3            This is a case, of course, on 12(b)(6) I've

4   got to view the allegation in the light most favorable to

5   the plaintiff where The Serbian Crown, a restaurant

6   located in Great Falls that served Russian and French and

7   Serbian cuisine allegedly went out business in April 2013

8   and Google, an Internet company based in California,

9   which offer search services including maps and

10   directories.

11            Plaintiff alleges here that sometime before

12   April 6, 2012, Google hosted informational business

13   listing for Serbian Crown through Google Maps and Google

14   Places which included the restaurant's address, telephone

15   number and along with the map and that's in the complaint

16   paragraph 11.

17            According to the complaint, on April 6, 2023,

18   Serbian Crown learned from a customer that Google's

19   listing inaccurately stated that the restaurant was

20   closed Saturdays, Sundays and Mondays and plaintiff was

21   unaware how long this listing had been on the -- produce

22   in response to a Google search.

23            Thereafter, Serbian Crown attempted to

24   contact Google in order to resolve the problem, and they

25   allege in paragraph 21 they were unable to resolve it.

1      And eventually, Serbian Crown hired an

2  Internet marketing consultant to correct the inaccurate

3  information regarding its operating hours which is

4  eventually remedied without Google's assistance.  And

5  that's paragraphs 22 and 33.

6      The complaint also alleged that because of

7  the false information contained in the Google listing,

8  previously regular and frequent customers stop visiting

9  the restaurant on weekends and alleges that the

10  inaccurate information about operating hours, deterred

11  would be patrons from a broader geographic area from

12  visiting the restaurant.  And because Google has

13  significant online presence, that Google's listing

14  deceived a substantial segment of Serbian Crown's

15  consumer based and caused reduction in their customer

16  traffic which ultimately dwindled Serbian Crown's revenue

17  and business goodwill.  So the restaurant was forced to

18  close on April 2013.  And these are all paragraphs 17,

19  19, 22 and 23.

20      Ultimately, the listing on April -- as of

21  April 3, 2014, lists Serbian Crown as permanently closed

22  and this is under Google Maps and Places.  That's

23  paragraph 25.

24      So the legal question here is whether the

25  plaintiff may state a claim for false advertising against

Google here under the Communications Decency Act.  And
Count II is a Lanham Act claim which deals with false
advertising.

And the defendant here argues first that
Google's listing on a search on the maps or places it's
not an advertisement and that it would be immune under
the Communications Decency Act in any event because
Google is an interactive computer service.

I conclude the motion should be granted for
two reasons.  First, I think Google is and I conclude
Google is immune from Serbian Crown's false advertising
claim under the provisions of Communications Decency Act
because Google is an interactive computer service as
defined by the act, and that's 47 U.S. Code Section
230(f)(2).  And the information about Serbian Crown's
operating hours was provided by another information
content provider, and therefore, Google cannot be held
liable for inaccurate content supplied by third party on
its website in response to a search.

Moreover, second they cannot -- the complaint
cannot go forward because Google's listing of The Serbian
Crown's restaurant is not a commercial advertising and
promotion under the Lanham Act, and Serbian Crown failed
to allege any facts establishing that the listing
proximately caused the restaurant to close, lose revenue,

1    goodwill.

2              The Communications Decency Act as we know,

3    precludes claims.  It is intended to be an immunity.  And

4    here, the act itself 230 says "No provider or user of

5    interactive computer service shall be treated as

6    publisher or speaker of any information provided by

7    another information content provider".  And that's

8    Section 230(c)(1).

9              And the act creates federal immunity to any

10   cause of action that would make an interactive computer

11   service provider liable for information originating from

12   a third party in the *Zuran* Z-U-R-A-N *versus American*

13   *Online* case.

14             I had a case *Rosetta Stone versus Google*, and

15   that Congress has established a general rule that

16   providers of interactive computer services are liable

17   only for speech that is properly attributable to them

18   under the *Nemet Chevrolet* case.

19             So immunity is given broad scope and it

20   ordinarily preempts state law claims such as the foregone

21   negligence claim that has been withdrawn.  And similarly

22   would, I think bar, and I conclude bars the false

23   advertising claim because Lanham Act holding has the

24   same -- the holding further exacerbates the purpose which

25   is protecting interactive computer service providers like

1    Google from liability for third party content hosted on

2    their websites.

3              So, there's no difference to me between

4    whether it's state law or the federal law here.  It --

5    the Communications Decency Act precludes holding

6    interactive computer service liable merely because they

7    allowed the content to be posted online, and that's *Nemet*

8    *Chevrolet*.

9              Google has been held to be an interactive

10   computer service by a number of different cases, and

11   they're cited in the briefs.  And the immunity would

12   apply to these claims for false advertising.

13             The second sub-issue is whether the false

14   advertising claim falls within the exception to the

15   intellectual property law that's exempt from the

16   Communications Decency Act.  And Serbian Crown has cited

17   *Doe versus FriendFinder*.  And *FriendFinder* is

18   distinguishable on several grounds.

19             But first of all, *FriendFinder* published the

20   information.  Second, it was a site that was intended to

21   draw individuals to do commercial transactions.  And here

22   we're talking about -- and *FriendFinder* was also a claim

23   about the plaintiff's claim for the right of publicity --

24   to be free from publicity which is a state law claim.

25             But here we're not talking about that.  We're

1    talking about a false advertising claim.  And it seems to

2    me The Serbian Crown does not allege here any right of

3    publicity.  This is about false advertising and

4    inaccurate information being posted.

5              So I think that -- I conclude that Google is

6    immune from Serbian Crown's false advertising claim

7    because the CDA absolved providers from liability.

8              As it relates to the issue of whether or not

9    an advertisement -- whether or not there was an

10   advertisement here, I do not conclude that this was an

11   advertisement.

12             But even if it was under the *Nemet Chevrolet*

13   case, I would want to turn to the issue of proximate

14   cause just briefly and that is under the *Lexmark* case

15   which has been cited by plaintiff and defense counsel,

16   causation still remains an inquiry under the Lanham Act.

17             And here, plaintiff has not plausibly alleged

18   proximate cause in order to assert a false advertising

19   claim if one were to be allowed to proceed because the

20   claim here is that an inaccurate listing of hours of

21   operation led to the loss of goodwill, led to the loss of

22   revenue and ultimately the closing of the restaurant when

23   plaintiff alleges that there are multiple Internet search

24   engines that have in response produced information about

25   Serbian Crown that was accurate.  Customers can still --

 1     could have still called the restaurant.

 2               And I have difficulty concluding that the

 3     interactive listing of time and hours proximately led to

 4     the cause of closing the restaurant.  And I think that

 5     under the *Lexmark* case, in the opinion Justice Scalia

 6     asserts that it is always up to the Court to ascertain

 7     whether or not a claim plausibly suggests proximate

 8     cause.  And in the particular case, I conclude that

 9     there's not a plausibility suggestion of proximate cause

10     that would survive if the claim were to be stayed.

11               So to be clear, my judgment is that the

12     action is barred by Communications Decency Act.  So I

13     dismiss the matter for the reasons just stated.  And I

14     don't think there are any facts that can be pled under

15     the circumstances here to allow for re-pleading.

16               So I'm going to dismiss the matter and leave

17     to amend will not be granted.

18               Thank you.  We're in recess.

19               Thank you, counsel, for the quality of your

20     preparation.  Good afternoon.

21               (Proceeding concluded at 3:46 p.m.)

22

23

24

25

CERTIFICATE OF REPORTER

I, Renecia Wilson, an official court reporter for the United State District Court of Virginia, Alexandria Division, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had upon the motions in the case of The Serbian Crown vs. Google, Inc.

I further certify that I was authorized and did report by stenotype the proceedings and evidence in said motions, and that the foregoing pages, numbered 1 to 36, inclusive, constitute the official transcript of said proceedings as taken from my shorthand notes.

IN WITNESS WHEREOF, I have hereto subscribed my name this 27th day of August, 2014.


                                    /s/
                        Renecia Wilson, RMR, CRR
                        Official Court Reporter